1    BURKE, WILLIAMS & SORENSEN, LLP
     DANIEL W. MAGUIRE, State Bar No. 120002
2    E-Mail: dmaguire@bwslaw.com
     444 South Flower Street
3    Suite 2400
     Los Angeles, CA 90071-2953
4    Telephone: (213) 236-0600
     Facsimile: (213) 236-2700
5
     Attorneys for Defendant
6    Life Insurance Company of North America

7

8                  UNITED STATES DISTRICT COURT

9                SOUTHERN DISTRICT OF CALIFORNIA

                               07 CV  2168    H  CAB
10

11   CONRAD SHEFF M.D., an          CASE NO.
     individual,
12                                  NOTICE OF REMOVAL OF CIVIL
                   Plaintiff,       ACTION
13
     v.                             [Federal Question – ERISA and
14                                  Diversity of Citizenship]
     LIFE INSURANCE COMPANY OF
15   NORTH AMERICA, a Pennsylvania
     Corporation conducting business in
16   the State of California and doing
     business as CIGNA GROUP
17   INSURANCE and Does 1 through
     50, inclusive,
18
                   Defendants.
19

20

21        TO PLAINTIFF CONRAD SHEFF, M.D. AND TO HIS ATTORNEYS OF

22   RECORD:

23        Defendant Life Insurance Company of North America ("LINA") hereby

24   serves notice of its removal of the above-entitled action to the United States District

25   Court for the Southern District of California from the Superior Court of the State of

26   California for the County of San Diego, North County Division, and respectfully

27   alleges as follows:

28   ///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4822-8184-9858 v1                        NOTICE OF REMOVAL OF CIVIL ACTION

ORIGINAL

1    **PLEADINGS AND PROCEEDINGS TO DATE**

2

3       1.    LINA is the sole named Defendant in the civil action ("Action") filed

4   by Plaintiff Conrad Sheff, M.D. ("Plaintiff") on September 24, 2007, in the

5   Superior Court of the State of California, in and for the County of San Diego, Case

6   No. 37-2007-00056537-CU-IC-NC.  Attached hereto as Exhibit "1" is a true copy

7   of the Summons and Complaint in said Action, together with the following

8   additional pleadings: Notice of Case Assignment, Civil Case Cover Sheet, and

9   Alternative Dispute Resolution Information package.  Said documents are the only

10  pleadings filed with the Court as of this date.  No responsive pleadings have as yet

11  been filed by Defendant.

12

                **GROUNDS FOR REMOVAL**

13

14      2.    The Action is a suit of a wholly civil nature brought in a California

15  court.  Removal is based upon federal question jurisdiction under 28 U.S.C.

16  § 1441(b) and upon diversity of citizenship under 28 U.S.C. §§ 1332(a) and

17  1441(a).  The Action is pending in San Diego County, California, and accordingly,

18  under 28 U.S.C. § 84(d), the United States District Court for the Southern District

19  of California is the proper forum for removal.

20

21              **FEDERAL QUESTION JURISDICTION**

22

23      3.    The District Courts of the United States have original jurisdiction over

24  an action founded on a claim arising under the Employee Retirement Income

25  Security Act of 1974, 29 U.S.C. § 1001, et seq. (hereinafter "ERISA").  United

26  States Code, Title 29, Section 1132(e)(1) confers original jurisdiction upon the

27  District Courts of the United States over claims initiated by plan participants or

28  ///

1    beneficiaries to recover benefits due or to enforce rights under employee benefit

2    plans governed by ERISA.

3         4.    A cause of action filed in state court that is preempted by ERISA and

4    comes within the scope of Section 1132(a) is removable to federal court under 28

5    U.S.C. § 1441(b) as an action arising under federal law, even if the defense of

6    ERISA preemption does not appear on the face of the complaint. *Metropolitan Life*

7    *Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

8         5.    The Action arises under an employee welfare plan governed by ERISA

9    and seeks relief that is governed by 29 U.S.C. § 1132(a), which provides an

10   exclusive federal cause of action for beneficiaries asserting improper processing of

11   claims under and seeking recovery of benefits from a plan. *Pilot Life Insurance Co.*

12   *v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 94 L.Ed.2d 39 (1987); *Kanne v.*

13   *Connecticut General Life Insurance Co.*, 867 F.2d 489 (9th Cir. 1988).

14        6.    The Complaint in the Action seeks recovery under an employee

15   welfare benefit plan established or maintained by an employer. *See* 29 U.S.C. §

16   1002(1)(5). Plaintiff's claims arise under an employee benefit plan established or

17   maintained through his employer pursuant to a policy issued to Southern California

18   Permanente Medical Group ("SCPMG") by LINA. Plaintiff was a participant in

19   and/or beneficiary of that benefit plan, under which his present claims arise.

20        7.    According to the allegations of the Complaint, LINA issued a contract

21   of insurance to Plaintiff and SCPMG (Complaint ¶ 5), which covered Plaintiff and

22   others. (Id.) Attached to the Complaint as Exhibit "A" is a document described by

23   the Complaint as the "policy" (Id.) Exhibit "A" to the Complaint appears to be a

24   portion of an SCPMG employee handbook describing the long-term disability

25   benefit at issue. (Only odd numbered pages from III-13 through III-19 are

26   attached.)

27        8.    This document describes the eligible class of insureds as "all actively

28   at work physicians." (Exhibit "A," p. III-13) The insurer is identified as Life

1    Insurance Company of North America, a CIGNA Company (Id.) and the terms of

2    what is described as the "LTD insurance plan" are said to be contained in a "master

3    policy."

4         9.    The employee handbook excerpt also states that "conversion to an

5    individual policy is not available under this coverage" (Exhibit "A," III-21), thereby

6    identifying the policy as a group insurance policy. The excerpt page numbers III-

7    23 and III-25 graph the LINA (CIGNA) LTD benefit as part of an overall disability

8    benefit package for eligible SCPMG employees.

9         10.    Submitted as Exhibit "2" to this Notice is the booklet-certificate

10   describing the group LTD policy certificate at issue. This booklet-certificate

11   establishes that LINA issued its group LTD insurance policy LK-020200 to

12   SCPMG effective October 1, 1998, revised and re-issued on March 13, 2003,

13   insuring three classes of eligible employees: Active, full-time partner physicians of

14   SCPMG (except per diem), active full-time employee physicians of SCPMG

15   (except per diem) and all grandfathered physicians as on file with SCPMG.

16        11.    The booklet-certificate contains a statement of ERISA rights beginning

17   at page 16, which identifies the booklet-certificate, together with the ERISA

18   supplemental information, as the summary plan description ("SPD") required by

19   ERISA. The supplemental information identifies the plan administrator as

20   SCPMG, outlines the authority and duties of the plan administrator, identifies the

21   agent for service of legal process, and sets forth a comprehensive explanation of the

22   participant's ERISA rights.

23        12.    Based on the above information, Plaintiff's claims arise under an

24   employee welfare benefit plan governed by ERISA.

25        13.    To the extent that Plaintiff's state law claims asserted in the Complaint

26   do not arise directly under ERISA, they arise from the same operative facts (i.e., the

27   alleged denial of disability benefits) and are subject to the jurisdiction of the United

28   ///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

1  States District Courts. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130,

2  16 L.Ed.2d 218 (1966).

## DIVERSITY OF CITIZENSHIP

5      14.    Defendant LINA is a corporation, organized and existing under the

6  laws of the State of Pennsylvania, and maintains its principal place of business in

7  the City of Philadelphia, Pennsylvania,

8      15.    The Complaint alleges that Plaintiff is a citizen and resident of the

9  State of California.

10      16.    The Complaint names as additional Defendants Does 1 through 50,

11  inclusive.  Said fictitious defendants have not been served with Summons and

12  Complaint in this Action, and by reason of the provisions of 28 U.S.C. § 1441(a),

13  said fictitious Defendants are to be disregarded for purposes of removal.

14      17.    The amount in controversy in the Action exceeds the sum of $75,000,

15  exclusive of interest and costs.  Diversity jurisdiction exists where the matter in

16  controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

17  28 U.S.C. § 1332(a).  The amount in controversy for jurisdictional purposes is

18  determined by the amount of damages or the value of the property that is the subject

19  of the action.  *Hunt v. Washington State Apple Advertising Commission*, 432 U.S.

20  333, 97 S.Ct. 2434 (1977).

21      18.    Plaintiff Sheff alleges that LINA breached an insurance contract by

22  terminating his disability claim.  (Complaint, ¶ 10)  He alleges that he became

23  disabled from a "severe illness and heart disease."  (Complaint ¶ 6)  As a

24  consequence of this alleged breach, Plaintiff claims damages "in an amount in

25  excess of $500,000."  (Complaint ¶ 16)  He also claims entitlement to mental and

26  emotional distress damages "in excess of $500,000" (Complaint ¶ 21), attorneys'

27  fees, costs of suit, and punitive and exemplary damages (Complaint, page 7).

28  / / /

19.    The test in determining whether the minimum amount in controversy requirement is satisfied is whether it is "more likely than not" that Sheff is seeking to recover more than $75,000 in this action exclusive of interest and costs. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996); *see Singer v. State Farm Mutual Automobile Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1996); *Conrad Assoc. v. Hartford Accident & Indemn. Co.*, 994 F.Supp. 1196, 1198 (N.D. Cal. 1998) [Jurisdictional minimum may be satisfied by claims for special and general damages, attorneys' fees and punitive damages]. Here, there is no doubt on this issue. Plaintiff pleads specific entitlement to $1,000,000 in damages, plus punitive damages in an undisclosed amount.

20.    Accordingly, LINA is informed and believes that this United States District Court has proper jurisdiction based upon diversity of citizenship.

## VENUE

21.    This is a suit of a wholly civil nature brought in a California court. The action is pending in San Diego County, California and, accordingly, under Title 28 United States Code §§ 84(d) and 1441(a), the United States District Court for the Southern District of California is the proper forum for removal.

## TIMELINESS OF REMOVAL

22.    Copies of the Summons and Complaint herein were first received by LINA by service on October 12, 2007. This Notice of Removal is filed within 30 days of said date, and within one year of the date of commencement of the Action. This removal is therefore timely under 28 U.S.C. § 1446(b).

/ / /

/ / /

/ / /

1      WHEREFORE, Removing Defendant LINA hereby notifies Plaintiff and his

2  attorneys that the Action, formerly pending in the Superior Court of the State of

3  California for the County of San Diego, Case No. 37-2007-00056537-CU-IC-NC,

4  has been removed from that Court to this United States District Court, Southern

5  District of California.

6

7  DATED: November 9, 2007                BURKE, WILLIAMS & SORENSEN, LLP
                                          DANIEL W. MAGUIRE
8

9

10 By: _____
                                          DANIEL W. MAGUIRE
11                                        Attorneys for Defendant
                                          Life Insurance Company of North
12                                        America

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**

10-13 @ 250

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
LIFE INSURANCE COMPANY OF NORTH AMERICA , a
Pennsylvania Corporation conducting business in the
State of California and doing business as CIGNA GROUP
INSURANCE and Does 1 through 50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CONRAD SHEFF M.D.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.  A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no presenta puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California. (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

CASE NUMBER:
*(Número del Caso)* 37-2007-00056537-CU-IC-NC

The name and address of the court is:
*(El nombre y dirección de la corte es)*
Superior Court of California
325 S. Melrose

Vista CA 92081
North County Branch

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Stephen F. Lopez, Esq.    (619)231-3131    (619) 374-1911
GERACI & LOPEZ
13355 Midland Road, Ste 140
Poway CA  92064

DATE:    SEP 24 2007    Clerk, by    M. Bates    , Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant
2. ☐ as the person sued under the fictitious name of *(specify):*
   Life Insurance Company of North America, A
   Pennsylvania Corporation Conducting Business in the
   State of California and Doing Business as Cigna
3. ☒ on behalf of *(specify):* Group Insurance.

   under: ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 ( minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465

Form Adopted for Mandatory Use
Judicial Council of California

**SUMMONS**

Legal Solutions ⊕ Plus

# EXHIBIT 1

0000    8

1  STEPHEN F. LOPEZ, ESQ. (SBN 125058)
   GERACI & LOPEZ
2  Attorneys at Law
   13355 Midland Road
3  Suite 140
   Poway, California 92064
4  Telephone: (619) 233-3131
   Direct:    (858) 679-8151
5  Facsimile: (619) 374-1911

6  Attorneys for Plaintiff Conrad Sheff M.D.

7

8              SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

9                          NORTH COUNTY DIVISION

10 CONRAD SHEFF M.D., an individual,        )  CASE NO: **37-2007-00056537-CU-IC-NC**
                                            )
11             Plaintiff,                    )  **COMPLAINT FOR BREACH OF**
                                            )  **CONTRACT, TORTIOUS BREACH OF**
12      v.                                   )  **THE IMPLIED COVENANT OF GOOD**
                                            )  **FAITH AND FAIR DEALING**
13 LIFE INSURANCE COMPANY OF NORTH )
   AMERICA, a Pennsylvania Corporation      )
14 conducting business in the State of California )
   and doing business as CIGNA GROUP        )
15 INSURANCE and Does 1, through 50,        )  **JURY DEMAND**
   inclusive,                               )
16                                          )
                                            )
17             Defendants.                   )
   _____   )

18      Plaintiff alleges as follows:

19                        <u>GENERAL ALLEGATIONS</u>

20      1.     Plaintiff CONRAD SHEFF M.D. is an individual, residing at all times mentioned

21 in the County of San Diego, State of California.

22      2.     Plaintiff is informed and believes that Defendant LIFE INSURANCE COMPANY

23 OF NORTH AMERICA (hereinafter referred to as "NORTH AMERICA) is a Pennsylvania

24 Corporation conducting business in the State of California under among other names, CIGNA

25 GROUP INSURANCE, and at all times mentioned herein, was engaged in the business of an

26 insurer within the County of San Diego, State of California.

27 ///

28

                                    1
                                Complaint

**EXHIBIT 1**                                              0000   **9**

3.  The identity and true names and capacities of the defendants named herein and DOES 1 through 50, inclusive, and each of them, are not known to Plaintiff. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants are responsible in some way for the occurrences alleged herein, and that Plaintiff's damages as alleged herein were proximately caused by the conduct of each of these defendants.

4.  Plaintiff is informed and believes in doing the acts alleged herein, Defendants, and each of them, including, but not limited to NORTH AMERICA and DOES 1 through 50, and each of them, were acting as the agents, servants, and employees of their co-defendants and in doing the acts alleged herein were acting within the scope of said agency, servancy, or employment, with the permission and consent of their co-defendants.

5.  On or before October 1, 1998 Defendants NORTH AMERICA and Does 1 through 50 ("Defendants") issued a written contract of insurance to Plaintiff and Southern California Permenante Medical Group. ("Subject Policy"). The Subject Policy was in full force and effect at all relevant times up to and including February 2, 2005, and at all relevant times thereafter. The Subject Policy was expressly intended to and did provide coverage for permanent long term disability coverage for persons insured thereunder, including Plaintiff.   Under the terms of the Subject Policy benefits are to be paid for long term disability in the event Plaintiff is unable to perform any occupation for which he is able to perform consistent with his training and education and/or is unable to earn more than 80% of his indexed earnings.  A true and correct copy of the subject policy is attached hereto as Exhibit "A" and incorporated herein by this reference.

6.  After the Subject Policy was issued, and more than six months before February 2, 2005, Plaintiff suffered from severe illness and heart disease which rendered him permanently disabled from his occupation as a physician. ("Subject Claim")

///

///

///

EXHIBIT 1

2
Complaint

7.     Pursuant to applicable law and the terms of the policy. Plaintiff reported his disability to Defendants and submitted a Subject Claim to Defendants under the Subject Policy for disability benefits. In making said claim. Plaintiff fulfilled all required terms and conditions of the Subject Policy and was and is disabled as defined therein.

8.     Following Plaintiff's submission of the Subject Claim Defendants purported to undertake an investigation of whether Plaintiff was permanently disabled as defined by the policy. Plaintiff cooperated fully with Defendants. and each of them. in the purported investigation.  On or about February 2. 2005. Defendants informed Plaintiff that they were taking the position that he was not permanently disabled as defined by the Subject Policy and advised him they would not pay any further disability benefits. including. long term disability benefits as described by the policy for Plaintiff's permanent disability.

9.     Following Defendants denial of the Subject Claim Plaintiff appealed the decision, but Defendants persisted in their refusal to pay all sums rightfully due and owing to Plaintiff under the terms of the Subject Policy. As a result. Plaintiff was forced to hire an attorney to represent him in pursuit of the benefits owed under the Subject Policy.

10.     On October 24. 2005. Plaintiff filed suit against Defendants, and each of them in the Superior Court of California, County of San Diego, case no. GIN048179. Thereafter, in consideration of Defendant North America's stipulation and agreement to reopen Plaintiff's claim for disability benefits and to toll all applicable statutes of limitation applicable to Plaintiff's claim during the time of North America's further investigation. which agreement was entered into and approved by North America on April 3. 2006. Plaintiff dismissed his suit without prejudice. Thereafter. as agreed Defendants reopened their investigation into the Subject Claim. On August 2. 2007. Defendants and each of them did again wrongfully deny Plaintiffs claim and as a result this suit was filed.

///
///
///
///

EXHIBIT 1

3
Complaint

I.

## FIRST CAUSE OF ACTION

(Breach of Contract)

11.    Plaintiff refers to the allegations contained in paragraphs 1 through 10 of his Complaint, and incorporates said allegations herein as if set forth in full.

12.    At all times relevant herein, and including on or about February 2, 2005, and August 2, 2007, there existed between Plaintiff and Defendants, and each of them, a valid, enforceable written contract of insurance providing coverage for disability benefits, including payment of long term disability benefits due to permanent disability as defined by the Subject Policy.

13.    Under the terms of the Subject Policy Defendants, and in exchange for the legal consideration of payment of policy premiums, Defendants, promised and agreed to pay Plaintiff all benefits for his permanent disability as set forth herein.

14     Plaintiff has performed all conditions, covenants, and promises required by him to be performed on his part in accordance with and under the terms and conditions of said contract of insurance and is disabled as defined therein.

15.    Defendants, and each of them, breached said contract of insurance by refusing to pay the full benefits due to Plaintiff for his permanent and long term disability.

16.    As a direct and proximate result of said breach of contract, Plaintiff has been damaged in an amount in excess of $500,000, subject to proof at the time of trial, including, but not limited to insurance benefits due and reasonable attorney fees.

II.

## SECOND CAUSE OF ACTION

(TORTIOUS BREACH OF THE IMPLIED COVENANT
OF GOOD FAITH AND FAIR DEALING)

17     Plaintiff refers to the allegations contained in paragraphs 1 through 16 of his complaint, and incorporates said allegations herein as if set forth in full.

///

EXHIBIT 1

4
Complaint

12

18    Plaintiff performed all conditions, covenants, and promises required to be performed on his part in accordance with and under the terms and conditions of the Subject Policy

19    By issuing the Subject Policy and accepting premiums, and by operation of law, Defendants, and each of them, created a special relationship between them and Plaintiff that Defendants would at all times act with the utmost good faith and fairness with respect to Plaintiff.

20    Defendants, and each of them, breached said duty by wrongfully denying Plaintiff's claim for long term permanent disability benefits without a proper basis for doing so and without a proper and thorough investigation. Defendants have breached the implied covenant of good faith and fair dealing by failing to comply with applicable law regarding the handling of Plaintiff's Subject Claim, including, but not limited to, the following acts:

    a.    Wrongfully refusing, without basis, to provide Plaintiff with long term disability coverage for his permanent disability;

    b.    Failing to construe all ambiguities in the Subject Policy in favor of their insured;

    c.    Failing to consider their insured's reasonable expectations of coverage;

    d.    Failing to give at least equal consideration to their insured's interests as they gave to its own interests in evaluating their insured's claim;

    e.    Failing to promptly, thoroughly, properly, and adequately investigate Plaintiff's claims;

    f.    Failing to effectuate, in good faith, a timely fair and equitable settlement of Plaintiff's claim, when liability for that claim was reasonably clear;

    h.    Failure to diligently investigate Plaintiff's claim before formally and lawfully denying coverage.

    i.    Refusing to reconsider and accept Plaintiff's claim for permanent disability benefits under the Subject Policy after Plaintiff submitted additional information and facts establishing the propriety of Plaintiff's claim and the unsubstantiated nature of the basis for Defendant's denial of benefits.

EXHIBIT 1

Complaint

13

21.   As a direct and proximate result of the conduct of Defendants, and each of them, Plaintiff has suffered severe and substantial emotional distress, mental anguish, and suffering. Plaintiff has and continues to incur damages in excess of the sum of $500,000.00.

22.   As a direct and proximate result of the conduct of Defendants, and each of them, Plaintiff has been forced to retain attorneys and incur substantial costs and expenses in an effort to obtain the policy benefits due from Defendants. Plaintiff is entitled to be compensated for such expenses and losses under California law in an amount to be determined at the time of trial.

23.   The conduct of Defendants, and each of them, in refusing to pay Plaintiff's policy benefits under the Subject Policy, and in acting in their own self-interest to the detriment of Plaintiff is a part of a pattern and practice of bad faith withholding of policy benefits to insureds. In particular, Plaintiff is informed and believes, and thereon alleges, that Defendants have a pattern or practice of wrongfully denying claims without basis for doing so and refusing payment on claims despite knowing payment is due. In doing so Defendants falsely represent that the insured's medical condition does not prevent him or her from working in despite knowledge that this not true. Defendants also falsely represent their denial is supported by medical opinion, knowing they have instructed the reviewing physician to find the insured are not disabled even if he or she is in fact disabled as defined by the policy. In withholding these benefits and doing the acts and committing the omissions alleged herein, Defendants have acted maliciously (i.e., conduct with intent to cause injury to Plaintiff by wrongfully depriving Plaintiff of its policy benefits through the use of false information and a policy of denying all claims based upon medical opinions known to be false), fraudulently (i.e., by intentionally misrepresenting concealing material facts in deceiving Plaintiff, including the false promise to pay benefits knowing they have no intent to do so.), and oppressively (i.e., by subjecting Plaintiff to unjust hardship and conscious disregard for Plaintiff's rights, including the right to benefits). Each of these acts has been ratified and adopted by Defendants, officers, and managing agents, so as to justify an award of exemplary and/or punitive damages.

///

///

///

EXHIBIT 1

WHEREFORE, Plaintiff prays as follows:

1.  For actual and compensatory damages in excess of $500,000.00, subject to proof at the time of trial;

2.  For prejudgment interest on all sums determined to be due;

3.  For punitive or exemplary damages;

4.  For reasonable attorney fees

5.  For cost of suit incurred herein;

6.  For all further relief the court deems just and proper.


### JURY DEMAND


Plaintiff hereby makes demand for a jury trial in this matter.

DATED: September 24, 2007

GERACI & LOPEZ

By: _____
Stephen F. Lopez
Attorneys for Plaintiff Conrad Shelf M.D.

EXHIBIT 1
7
Complaint
00(   15

# LONG-TERM DISABILITY INSURANCE

**Eligibility**   All actively at work physicians, except Per Diem, are eligible for Long-Term Disability (LTD) Insurance. Employee physicians may enroll, at their own expense, within 31 days of hire without proof of insurability. If an employee physician wishes to enroll after the first 31 days of hire, proof of insurability will be required.

Partner physicians are automatically enrolled at SCPMG expense upon election to partnership. The coverage may not be declined.

Insurer: Life Insurance Company of North America, a CIGNA Company.

The terms of the LTD Insurance Plan are contained in a master policy. In the event of any contradictions or disputes as to the terms contained in this section and the master policy, the legal master policy will govern.

**Benefits**   The LTD benefit is equal to 50% of your monthly Covered Earnings. Covered Earnings means the **greater** of:

a) 50% of your Monthly Base Compensation as of the onset of disability prorated to your work schedule at that time (including compensation increases during the first six months of disability), or

b) 50% of your Average Monthly Gross Compensation for the 12 months ending the June 30 or December 31 preceding the onset of disability

Gross Compensation means your Monthly Base Compensation plus overnight and extra duty pay, but excludes amounts received as bonuses, awards, imputed income, or Year-End Performance Draw.

The maximum amount of monthly Covered Earnings is $30,000, for a maximum LTD benefit of $15,000 per month. The minimum LTD benefit is $100 per month. The LTD benefit may also be subject to the limitations described later under Benefit Reductions.

During the benefit period, you may be required to provide periodic proof that you remain disabled. CIGNA may reasonably require that you have an examination at any time you are claiming benefits.

**EXHIBIT 1**

**EXHIBIT A**

.16

LONG-TERM DISABILITY INSURANCE

**When LTD Benefits End**

LTD benefits will end on the earliest of:

- the date you earn more than 80% of your Indexed Covered Earnings
- the date CIGNA determines you are not disabled
- the end of the maximum benefit period
- the date of your death

See the next section for a definition of Indexed Covered Earnings.

**Definition of Disability**

You will be considered disabled if, solely due to injury or sickness:

- *For the first 60 months LTD benefits are payable,* you are unable:

  - to perform all the material duties of your regular occupation, or

  - to earn more than 80% of your Indexed Covered Earnings

- *After LTD benefits have been payable for 60 months,* you are unable:

  - to perform all the material duties of any occupation for which you may reasonably become qualified based on education, training or experience, or

  - to earn more than 80% of your Indexed Covered Earnings

***Indexed Covered Earnings***

- *For the first 12 months LTD benefits are payable,* your Indexed Covered Earnings are equal to your Monthly Covered Earnings

- *After 12 monthly LTD benefits are payable,* your Indexed Covered Earnings are equal to your Monthly Covered Earnings plus an increase applied on each anniversary of the date LTD benefits began. The amount of the increase will be the lesser of:

  - 10% of your Indexed Covered Earnings during your preceding year of disability, or

  - the rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year

# EXHIBIT 1

**17**

LONG-TERM DISABILITY INSURANCE

**Benefit Limit for Mental Illness and Substance Abuse**

LTD benefits are limited for a disability caused or contributed to by a mental illness or substance abuse. The Plan provides coverage up to a lifetime maximum of 24 monthly payments. Once the 24 monthly payments have been made, no further benefits will be payable for any of the following conditions:

- alcoholism

- anxiety disorders

- delusional (paranoid) disorders

- depressive disorders

- drug addition or abuse

- eating disorders

- mental illness (bipolar affective disorder, psychotic disease and schizophrenia will be paid for the duration of the disability or to age 65, whichever occurs first)

- somatoform disorders (psychosomatic illness)

If you are confined in a hospital for more than 14 consecutive days for one of the conditions listed above, the confinement will not count toward the lifetime maximum. The hospital confinement, however, must occur before you reach the lifetime maximum benefit limit.

**Work Incentive Benefit**

If you are able to return to work for either SCPMG or another employer while disabled, you may continue to receive LTD benefits—known as a work incentive benefit—during a period of partial disability. Any reduced work schedule must be approved by your Chief of Service and the Area Associate Medical Director.

Your LTD benefits, however, could be reduced as described below.

*For the first 12 months you return to work:*
Subject to the disability benefit limitations discussed in previous sections, if the combination of the following three sources of benefits or income exceeds 100% of your Indexed Covered Earnings in any month, the LTD benefit will be reduced to bring the total to no more than 100%:

- your LTD benefit

- plus your current earnings

- plus any other income benefits

EXHIBIT 1

LONG-TERM DISABILITY INSURANCE

**Reasonable Accommodation Benefit**

If you are a disabled employee physician, SCPMG may provide reasonable accommodation so that you are able to return to work. A reasonable accommodation is any modification or adjustment to a job, an employment practice or the work environment that makes it possible for a disabled person to perform the material duties of any occupation without causing undue hardship on SCPMG. SCPMG may receive reimbursement for any expenses incurred in providing the reasonable accommodation if the following conditions are met:

- the accommodation is made on your behalf and results in your ability to return to any occupation with SCPMG

- the accommodation is approved in writing by the insurance company before it is implemented or any expense incurred

- the accommodation meets the federal standards of a reasonable accommodation as detailed in the Americans With Disabilities Act of 1990, as amended

**Spousal Rehabilitation Program**

At CIGNA's determination, your spouse may qualify to participate in the spousal rehabilitation program if the following conditions are met:

- you have been continuously disabled for at least 12 months

- your spouse earns less than 60% of your Monthly Base Compensation

- your spouse is determined to be a suitable candidate for rehabilitation

Your spouse must be your lawful spouse living with you on the date your disability begins. The rehabilitation program will end if your spouse is not living with you during the term of the program.

Your LTD benefit will be reduced by 50% of your spouse's earnings from rehabilitative work. If your spouse was working before the rehabilitation program begins, your LTD benefit will be reduced by 50% of the increase in income that results from your spouse's participation in the program.

EXHIBIT 1

LONG-TERM DISABILITY INSURANCE

**Termination of Insurance**

Your LTD Insurance coverage terminates on the date any of the following situations occur:

- you are no longer in active service
- you do not pay the premiums required for coverage
- you no longer qualify for coverage
- the policy is terminated

During an approved unpaid leave of absence, LTD Insurance coverage can continue for up to 12 months, if you pay the required premiums.

**Waiver of Premium**

For employee physicians, if you leave work due to a certified disability, premiums will continue to be due until your disability benefit is approved and payment begins. After that time, premium payment is waived while benefits are payable.

For partner physicians, the waiver of premium provision begins after you have been approved to receive a disability benefit and payment begins. The waiver of premium will continue while benefits are payable. You will save additional taxes due on the premium amount (Imputed Income) since SCPMG is no longer required to pay the premiums.

**No Conversion**

Conversion to an individual policy is not available under this coverage.

**Claims**

Permanente Benefits and Retirement Plans or CIGNA can assist you in filing your claim.

**Cost**

For employee physicians, premiums are paid by the physician. For partner physicians, premiums are paid by Medical Group.

EXHIBIT 1                    III—21                    2 0

# SICK LEAVE AND DISABILITY BENEFITS TIMELINE

## PARTNERS

Your Sick Leave and Disability programs are integrated to keep you in active Partner status for as long as possible. Partnership status may be active even if you are on a leave that is not paid. The timeline below depicts the range of time that these benefits continue from the first day of disability to the partnership end date. The time available depends on your sick leave balances at the time you become disabled. This timeline assumes a partner has a full bank of all Sick Leave benefits.

| Month | 0 | 1 | 6 | 12 | 30 | 36 Termination |
|---|---|---|---|---|---|---|
| SCPMG Pay | ASL 100% | CC 60%, AASL 40% | CSL 25% | | | |
| Partnership Continues | ASL 100% | AASL, CC 5 months | CSL 25% 6 months | CSL 0% 18 months | LWOP 6 months | Maximum 36 months |
| CIGNA Benefit | 6-Month Waiting Period | | LTD 50% * To Age 65 (or ADEA Schedule) | | | |

\* Monthly benefit limited to $15,000/month

---

### Glossary of Terms

| | | |
|---|---|---|
| AASL | - | Accumulated Acute Sick Leave |
| ASL | - | Acute Sick Leave |
| CC | - | Compensation Continuance Program |
| CIGNA | - | Disability Insurance Carrier |
| CSL | - | Chronic Sick Leave |
| LTD | - | Long-Term Disability |
| LWOP | - | Leave Without Pay |

III—23

**EXHIBIT 1**

21

# SICK LEAVE AND DISABILITY BENEFITS TIMELINE

## SPECIAL CATEGORY

Your Sick Leave and Disability programs are integrated to keep you on active status for as long as possible. Employment status may be active even if you are on a leave that is not paid. The timeline below depicts the range of time that these benefits continue from the first day of disability to the employment end date. This timeline assumes a Special Category physician has a full bank of Sick Leave benefits.

| Month: | 0 | 1 | | 4 | 7 Termination |

| SCPMG Pay | ASL 100% | ACSL 50% Maximum 3 months |

| Employment Continues | ASL 100% | ACSL 3 months | LWOP 3 months | Maximum 7 months |

| CIGNA Benefit | 30 Day Waiting Period | STD 50% * (if purchased) 5 months | LTD 50% ** (if purchased) To Age 65 (or ADEA Schedule) |

Weekly benefit limited to $2,400/week
Monthly benefit limited to $15,000/month

## Glossary of Terms

ACSL - Accumulated Chronic Sick Leave
ASL - Acute Sick Leave
CIGNA - Disability Insurance Carrier
LTD - Long-Term Disability
LWOP - Leave Without Pay
STD - Short-Term Disability

III - 25

# EXHIBIT 1

22

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** (Name, State bar number, and address):

Stephen F. Lopez, Esq. SBN 235058
GERACI & LOPEZ
13355 Midland Road,
Suite 140
Poway CA 92064
TELEPHONE NO. (619)231-3131    FAX NO. (619) 374-1911

**ATTORNEY FOR** (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Diego
STREET ADDRESS: 325 S. Melrose
MAILING ADDRESS:
CITY AND ZIP CODE: Vista CA 92081
BRANCH NAME: North County Branch

FOR COURT USE ONLY

CASE NUMBER: 37-2007-00056537-CU-IC-NC

| CASE NAME: Sheff v. Life Ins. Company of N. America | | |
|---|---|---|
| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** |
| X Unlimited (Amount demanded exceeds $25,000) | Limited (Amount demanded is $25,000 or less) | Counter    Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) |

JUDGE:
DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- Auto (22)
- Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- Asbestos (04)
- Product liability (24)
- Medical malpractice (45)
- Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- Business tort/unfair business practice (07)
- Civil rights (08)
- Defamation (13)
- Fraud (16)
- Intellectual property (19)
- Professional negligence (25)
- Other non-PI/PD/WD tort (35)

**Employment**
- Wrongful termination (36)
- Other employment (15)

**Contract**
- Breach of contract/warranty (06)
- Rule 3.740 collections (09)
- Other collections (09)
- X Insurance coverage (18)
- Other contract (37)

**Real Property**
- Eminent domain/Inverse condemnation (14)
- Wrongful eviction (33)
- Other real property (26)

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38)

**Judicial Review**
- Asset forfeiture (05)
- Petition re: arbitration award (11)
- Writ of mandate (02)
- Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- Antitrust/Trade regulation (03)
- Construction defect (10)
- Mass tort (40)
- Securities litigation (28)
- Environmental/Toxic tort (30)
- Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- RICO (27)
- Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- Partnership and corporate governance (21)
- Other petition (not specified above) (43)

2. This case ____ is X is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. Large number of separately represented parties
   b. Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. Substantial amount of documentary evidence
   d. Large number of witnesses
   e. Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. X monetary  b. nonmonetary; declaratory or injunctive relief  c. X punitive

4. Number of causes of action (specify): 2

5. This case ____ is X is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: September 24, 2007

Stephen F. Lopez
(TYPE OR PRINT NAME)

(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
SD-CV51

EXHIBIT

23

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
STREET ADDRESS:    325 S. Melrose
MAILING ADDRESS:    325 S. Melrose
CITY AND ZIP CODE:    Vista, CA 92081
BRANCH NAME:    North County
TELEPHONE NUMBER:    (760) 806-6350

PLAINTIFF(S) / PETITIONER(S):    CONRAD MD SHEFF

DEFENDANT(S) / RESPONDENT(S):    Life Insurance Company of North America

SHEFF VS. LIFE INSURANCE COMPANY OF NORTH AMERICA

| | CASE NUMBER: |
|---|---|
| **NOTICE OF CASE ASSIGNMENT** | 37-2007-00056537-CU-IC-NC |

Department: N-31

Judge:  Lisa Guy-Schall

**COMPLAINT/PETITION FILED:** 09/24/2007

## CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

**TIME STANDARDS:** The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

**COMPLAINTS:** Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

**DEFENDANT'S APPEARANCE:** Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

**DEFAULT:** If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

# EXHIBIT 1

Page: 1

SDSC CIV-721 (Rev. 11-06)         **NOTICE OF CASE ASSIGNMENT**         **24**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE NUMBER: 37-2007-00056537-CU-IC-NC    CASE TITLE: SHEFF vs. Life Insurance Company of North America

## <u>NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE</u>

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Alternative Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.1.5, Division II and CRC Rule 201.9.

### ADR POLICY

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial.

### ADR OPTIONS

1) CIVIL MEDIATION PROGRAM: The San Diego Superior Court Civil Mediation Program is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participant in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically. Mediation is a non- binding process in which a trained mediator 1) facilitates communication between disputants, and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute – the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

Assignment to Mediation, Cost and Timelines: Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for county-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. Discovery: Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred. Attendance at Mediation: Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

2) JUDICIAL ARBITRATION: Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

Assignment to Arbitration, Cost and Timelines: Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court

EXHIBIT 1

SDSC CIV-730 (Rev 12-06)    25    Page: 1

**3) SETTLEMENT CONFERENCE:** The goal of a settlement conference is to assist the parties in their efforts to negotiate a settlement of all or part of the dispute. Parties may, at any time, request a settlement conference before the judge assigned to their case; request another assigned judge or a pro tem to act as settlement officer; or may privately utilize the services of a retired judge. The court may also order a case to a mandatory settlement conference prior to trial before the court's assigned Settlement Conference judge.

**4) OTHER VOLUNTARY ADR:** Parties may voluntarily stipulate to private ADR options outside the court system including private binding arbitration, private early neutral evaluation or private judging at any time by completing the "Stipulation to Alternative Dispute Resolution Process" which is included in this ADR package. Parties may also utilize mediation services offered by programs that are partially funded by the county's Dispute Resolution Programs Act. These services are available at no cost or on a sliding scale based on need. For a list of approved DRPA providers, please contact the County's DRPA program office at (760) 726-4900.

**ADDITIONAL ADR INFORMATION:** For more information about the Civil Mediation Program, please contact the Civil Mediation Department at (619) 515-8908. For more information about the Judicial Arbitration Program, please contact the Arbitration Office at (619) 531-3818. For more information about Settlement Conferences, please contact the Independent Calendar department to which your case is assigned. Please note that staff can only discuss ADR options and cannot give legal advice.

EXHIBIT 1

FOR COURT USE ONLY

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SAN DIEGO

STREET ADDRESS:     325 S. Melrose

MAILING ADDRESS:     325 S. Melrose

CITY, STATE, & ZIP CODE: Vista, CA  92081-6695

BRANCH NAME:     North County

PLAINTIFF(S):     CONRAD MD SHEFF

DEFENDANT(S): Life Insurance Company of North America DBA Cigna Group Insurance

SHORT TITLE:     SHEFF VS. LIFE INSURANCE COMPANY OF NORTH AMERICA

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS (CRC 3.221) | CASE NUMBER: 37-2007-00056537-CU-IC-NC |
|---|---|

Judge: Lisa Guy-Schall                                    Department: N-31

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution process. Selection of any of these options will not delay any case management time-lines.

☐ Court-Referred Mediation Program                    ☐ Court-Ordered Nonbinding Arbitration

☐ Private Neutral Evaluation                          ☐ Court-Ordered Binding Arbitration (Stipulated)

☐ Private Mini-Trial                                  ☐ Private Reference to General Referee

☐ Private Summary Jury Trial                          ☐ Private Reference to Judge

☐ Private Settlement Conference with Private Neutral  ☐ Private Binding Arbitration

☐ Other (specify): _____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate: (mediation & arbitration only) _____

Date: _____                    Date: _____

_____                  _____
Name of Plaintiff                                 Name of Defendant

_____                  _____
Signature                                         Signature

_____                  _____
Name of Plaintiff's Attorney                      Name of Defendant's Attorney

_____                  _____
Signature                                         Signature

(Attach another sheet if additional names are necessary). It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, 3.1385. Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all un-served, non-appearing or actions by names parties are dismissed.

**IT IS SO ORDERED.**

Dated:  09/24/2007                                _____
                                                  JUDGE OF THE SUPERIOR COURT

SDSC civ-359 (Rev 01-07)                          Page: 1

**EXHIBIT 1**

**STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**

27

Group Insurance Plan

# Long Term Disability Insurance

*Policy:*
*LK 020200*

Southern California Permanente Medical Group

**EXHIBIT 2**



# FOREWORD

Disability insurance provides individuals and their families with financial protection. The Disability Insurance Benefit described in this booklet will help secure your family's financial security in the event of your disability.

The need for disability insurance protection depends on individual circumstances and financial situations. Your Employer is offering you the opportunity to purchase this insurance to make your benefit program more comprehensive and responsive to your needs.

The following pages describe the main provisions of the disability insurance plan available to you.

Insurance Benefits described in the following pages will apply to you if your Employer has made this coverage available to you at no cost or you have elected the benefit and authorized payroll deduction for the required premium.



**LIFE INSURANCE COMPANY OF NORTH AMERICA**
1601 CHESTNUT STREET
PHILADELPHIA, PA 19192-2235
(800) 732-1603  TDD (800) 552-5744
A STOCK INSURANCE COMPANY

**GROUP INSURANCE**
**CERTIFICATE**

We, the LIFE INSURANCE COMPANY OF NORTH AMERICA, certify that we have issued a Group Policy, LK-020200, to Southern California Permanente Medical Group (SCPMG).

We certify that we insure all eligible persons, who are enrolled according to the terms of the Policy. Your coverage will begin and end according to the terms set forth in this certificate.

This certificate describes the benefits and basic provisions of your coverage. You should read it with care so you will understand your coverage.

This is not the insurance contract. It does not waive or alter any of the terms of the Policy. If questions arise, the Policy will govern. You may examine the Policy at the office of the Policyholder or the Administrator.

This certificate replaces any and all certificates which may have been issued to you in the past under the Policy.

*Gregory H. Wolf, President*

TL-004704

**EXHIBIT 2**



## TABLE OF CONTENTS

SCHEDULE OF BENEFITS FOR CLASS 1 ................................................... 1

SCHEDULE OF BENEFITS FOR CLASS 2 ................................................... 2

SCHEDULE OF BENEFITS FOR CLASS 3 ................................................... 3

WHO IS ELIGIBLE ...................................................................... 4

WHEN COVERAGE BEGINS ............................................................... 4

WHEN COVERAGE ENDS ................................................................. 4

WHEN COVERAGE CONTINUES ........................................................... 4

WHAT IS COVERED ..................................................................... 5

WHAT IS NOT COVERED ............................................................... 10

CLAIM PROVISIONS ................................................................... 10

ADMINISTRATIVE PROVISIONS ......................................................... 12

GENERAL PROVISIONS ................................................................ 12

DEFINITIONS ........................................................................ 13

805

EXHIBIT 2

## SCHEDULE OF BENEFITS FOR CLASS 1

| | |
|---|---|
| Policy Effective Date: | October 1, 1998 |
| Revise and Reissue Date: | March 13, 2003 |
| Policy Anniversary Date: | January 1 |
| Policy Number: | LK-020200 |
| Eligible Class Definition: | All active, Full-time Partner Physicians of Southern California Permanente Medical Group, the Employer, except Per Diem (as defined by the Employer). |

**Eligibility Waiting Period**
If you were hired on or before
the Policy Effective Date:                     No Waiting Period.
If you were hired after
the Policy Effective Date:                      No Waiting Period.

**Benefit Waiting Period**                      6 months

**Disability Benefit**                      The lesser of 50% of your monthly Covered Earnings rounded to the nearer dollar or your Maximum Disability Benefit.

If, for any month, the sum of your Disability Benefit and Other Income Benefits exceed 60% of your monthly Covered Earnings, your Disability Benefit will be reduced by the excess amount.

"Other Income Benefits" means any benefits listed in the Other Income Benefits provision that you receive on your own behalf or for your dependents, or which your dependents receive because of your entitlement to Other Income Benefits.

**Maximum Disability Benefit**                      $15,000 per month

**Minimum Disability Benefit**                      $100 per month

**Maximum Benefit Period**

| Age When Disability Begins | Maximum Benefit Period |
|---|---|
| Age 62 or under | Your 65th birthday or the date the 42nd Monthly Benefit is payable, if later. |
| Age 63 | The date the 36th Monthly Benefit is payable. |
| Age 64 | The date the 30th Monthly Benefit is payable. |
| Age 65 | The date the 24th Monthly Benefit is payable. |
| Age 66 | The date the 21st Monthly Benefit is payable. |
| Age 67 | The date the 18th Monthly Benefit is payable. |
| Age 68 | The date the 15th Monthly Benefit is payable. |
| Age 69 or older | The date the 12th Monthly Benefit is payable. |

TL-004714(20200)

1

**EXHIBIT 2**

## SCHEDULE OF BENEFITS FOR CLASS 2

| | |
|---|---|
| **Policy Effective Date:** | October 1, 1998 |
| **Revise and Reissue Date:** | March 13, 2003 |
| **Policy Anniversary Date:** | January 1 |
| **Policy Number:** | LK-020200 |
| **Eligible Class Definition:** | All active, Full-time Employee Physicians of Southern California Permanente Medical Group, the Employer, except Per Diem (as defined by the Employer). |

**Eligibility Waiting Period**
If you were hired on or before
the Policy Effective Date:        No Waiting Period.
If you were hired after
the Policy Effective Date:        No Waiting Period.

**Benefit Waiting Period**        6 months

**Disability Benefit**        The lesser of 50% of your monthly Covered Earnings rounded to the nearer dollar or your Maximum Disability Benefit.

If, for any month, the sum of your Disability Benefit and Other Income Benefits exceed 60% of your monthly Covered Earnings, your Disability Benefit will be reduced by the excess amount.

"Other Income Benefits" means any benefits listed in the Other Income Benefits provision that you receive on your own behalf or for your dependents, or which your dependents receive because of your entitlement to Other Income Benefits.

**Maximum Disability Benefit**        $15,000 per month

**Minimum Disability Benefit**        $100 per month

**Maximum Benefit Period**

| Age When Disability Begins | Maximum Benefit Period |
|---|---|
| Age 62 or under | Your 65th birthday or the date the 42nd Monthly Benefit is payable, if later. |
| Age 63 | The date the 36th Monthly Benefit is payable. |
| Age 64 | The date the 30th Monthly Benefit is payable. |
| Age 65 | The date the 24th Monthly Benefit is payable. |
| Age 66 | The date the 21st Monthly Benefit is payable. |
| Age 67 | The date the 18th Monthly Benefit is payable. |
| Age 68 | The date the 15th Monthly Benefit is payable. |
| Age 69 or older | The date the 12th Monthly Benefit is payable. |

TL-004774 (70200)

2

807

**EXHIBIT 2**

3.3



## SCHEDULE OF BENEFITS FOR CLASS 3

| | |
|---|---|
| **Policy Effective Date:** | October 1, 1998 |
| **Revise and Reissue Date:** | March 13, 2003 |
| **Policy Anniversary Date:** | January 1 |
| **Policy Number:** | LK-020200 |
| **Eligible Class Definition:** | All Grandfathered Physicians as on file with Southern California Permanente Medical Group (the Employer) and the Insurance Company. |

**Eligibility Waiting Period**
If you were hired on or before
the Policy Effective Date:          No Waiting Period.
If you were hired after
the Policy Effective Date:          No Waiting Period.

**Benefit Waiting Period**        6 months

**Disability Benefit**         The lesser of 50% of your monthly Covered Earnings rounded to the nearer dollar or your Maximum Disability Benefit.

If, for any month, the sum of your Disability Benefit and Other Income Benefits exceed 60% of your monthly Covered Earnings, your Disability Benefit will be reduced by the excess amount.

"Other Income Benefits" means any benefits listed in the Other Income Benefits provision that you receive on your own behalf or for your dependents, or which your dependents receive because of your entitlement to Other Income Benefits.

**Maximum Disability Benefit**        $15,000 per month

**Minimum Disability Benefit**        $100 per month

**Maximum Benefit Period**

| Age When Disability Begins | Maximum Benefit Period |
|---|---|
| Age 62 or under | Your 65th birthday or the date the 42nd Monthly Benefit is payable, if later. |
| Age 63 | The date the 36th Monthly Benefit is payable. |
| Age 64 | The date the 30th Monthly Benefit is payable. |
| Age 65 | The date the 24th Monthly Benefit is payable. |
| Age 66 | The date the 21st Monthly Benefit is payable. |
| Age 67 | The date the 18th Monthly Benefit is payable. |
| Age 68 | The date the 15th Monthly Benefit is payable. |
| Age 69 or older | The date the 12th Monthly Benefit is payable. |

TL-004774 (020200)

3

808

**EXHIBIT 2**                **34**

## WHO IS ELIGIBLE

If you qualify under the Class Definition shown in the Schedule of Benefits you are eligible for coverage under the Policy on the Policy Effective Date.

TL-004710 (20200)

## WHEN COVERAGE BEGINS

You will be insured on the date you become eligible, if you are not required to contribute to the cost of this insurance.

If you are required to contribute to the cost of your insurance you may elect to be insured only by authorizing payroll deduction within 60 days after you become eligible in a form approved by the Employer and us. The effective date of your insurance depends on the date coverage is elected.

If you elect coverage within 60 days after you become eligible, your insurance is effective on the latest of the following dates.
1.      The Policy Effective Date.
2.      The date you authorized payroll deduction.
3.      The date the completed enrollment request is received by Southern California Permanente Medical Group (the Employer).

If you are not in Active Service on the date your insurance would otherwise be effective, it will be effective on the date you return to any occupation for your Employer on a Full-time basis.

TL-004712 (20200)

## WHEN COVERAGE ENDS

Your insurance ends on the earliest of the dates below.
1.      The date you are eligible for coverage under a plan intended to replace this coverage.
2.      The date the Policy is terminated.
3.      The date you no longer qualify under your Class Definition.
4.      The day after the period for which premiums are paid.
5.      The date you are no longer in Active Service.

TL-004714

## WHEN COVERAGE CONTINUES

Your Disability Insurance will continue if your Active Service ends because of a Disability for which benefits under the Policy are or may become payable. Your premiums will be waived while Disability Benefits are payable. If you do not return to Active Service, this insurance ends when your Disability ends or when benefits are no longer payable, whichever occurs first.

If your Active Service ends because you take an Employer approved leave of absence, we will continue your insurance for up to 12 months while you are on a leave of absence, if the required premium is paid.

If your insurance continues and you become Disabled during the leave of absence, Disability Benefits will not begin until you satisfy your Benefit Waiting Period.

TL-004716 (20200)

4

EXHIBIT 2



## DESCRIPTION OF BENEFITS
## WHAT IS COVERED

**Disability Benefits**

If you become Disabled, as we define the term in the Definitions section, while you are covered under the Policy, we will pay you Disability Benefits. After you are Disabled, you must satisfy the Benefit Waiting Period and be under the care and treatment of a Doctor. Also, we ask you to provide us with satisfactory proof of your Disability, at your expense, before benefits will be paid.

We will require continued proof of your Disability for benefits to continue.

**Benefit Waiting Period**

The Benefit Waiting Period is the period of time you must be continuously Disabled before Disability Benefits may be payable. Your Benefit Waiting Period is shown in the Schedule of Benefits.

We will not require you to satisfy the Benefit Waiting Period if benefits were payable to you under a Prior Plan on the Policy Effective Date and you return to Active Service within 6 months after this date. Your return to Active Service must be for more than 14 consecutive days but less than 6 months. Your later period of Disability must be caused by the same or related causes for your Benefit Waiting Period to be waived.

**Trial Work Days**

Under this plan, you can attempt to return to Active Service without having to start a new Benefit Waiting Period if you cannot continue working, provided you have not worked for more than the specified number of days. A period of Disability is continuous even if you can return to Active Service for up to 90 days during the Benefit Waiting Period. Your Benefit Waiting Period will not be extended by the number of days you returned to Active Service during this period.

**Termination of Your Disability Benefits**

Your Disability Benefits will end on the earliest of the dates listed below.
1.      The date you earn more than 80% of your Indexed Covered Earnings.
2.      The date we determine you are no longer Disabled.
3.      The date the Maximum Benefit Period ends.
4.      The date you die.

**Successive Periods of Disability**

Once you are eligible to receive Disability Benefits under the Policy, separate periods of Disability resulting from the same or related causes are a continuous period of Disability even if you can return to Active Service for more than one day but less than 6 consecutive months.

A period of Disability is not continuous if separate periods of Disability result from unrelated causes, or your later Disability occurs after your coverage under the Policy ends.

The Successive Periods of Disability provision will not apply if you are eligible for coverage under a plan that replaces the Policy.

5

EXHIBIT 2

810

36



### Mental Illness, Alcoholism and Drug Abuse Limitation

We will pay Disability Benefits on a limited basis during your lifetime for a Disability caused by, or contributed to by, any one or more of the following conditions. Once 24 monthly Disability Benefits have been paid, no further benefits will be payable for any of the following conditions.

1.   Alcoholism
2.   Anxiety Disorders
3.   Delusional (paranoid) disorders
4.   Depressive disorders
5.   Drug addiction or abuse
6.   Eating disorders
7.   Mental Illness
8.   Somatoform disorders (psychosomatic illness).

If, before reaching your lifetime maximum benefit, you are confined in a hospital for more than 14 consecutive days, that period of confinement will not count against the lifetime maximum benefit. The confinement must be for the care or treatment of any of the conditions listed above.

### Pre-Existing Condition Limitation

We will not pay Disability Benefits if your Disability is caused or contributed to by, or results from, a Pre-Existing Condition. A "pre-existing condition" is any Injury or Sickness for which you incurred expenses, received medical treatment, care or services including diagnostic measures, took prescribed drugs or medicines, or consulted a Doctor within 3 months before your most recent effective date of insurance.

The Pre-Existing Condition Limitation will apply to any added benefits or increases in benefits. It will not apply to a period of Disability that begins after you are in Active Service for at least 12 months after your most recent effective date of insurance, or the effective date of any added or increased benefits.

We will not apply the Pre-Existing Condition Limitation to your Disability if you were covered under your Employer's Prior Plan and satisfied the pre-existing condition of that plan. If you were covered under your Employer's Prior Plan, but did not fully satisfy the pre-existing condition limitation of that plan, we will credit you for any time you did satisfy. If you are now covered for benefits in excess of your Prior Plan coverage, the Pre-Existing Condition Limitation will apply to the excess amount.

Time will not be credited toward this limitation for any day you are not actively at work due to your Injury or Sickness. We will extend the limitation by the number of days you are not actively at work due to your Injury or Sickness.

### Disability Benefit Calculation

Your Disability Benefit for any month Disability Benefits are payable to you is shown in the Schedule of Benefits. We base our calculation of Disability Benefits on a 30 day period. Benefits will be prorated if payable for any period less than a month.

### Work Incentive Benefit

For the first 12 months you return to work your Disability Benefit is as defined in the Schedule of Benefits. If, for any month during this period, the sum of your Disability Benefit, your current earnings and any additional Other Income Benefits exceed 100% of your Indexed Covered Earnings, your Disability Benefit will be reduced by the excess amount.

After 12 months, your Disability Benefit is as shown in the Schedule of Benefits, reduced by 50% of your current earnings received during any month you return to work. If the sum of your Disability Benefit, your current earnings and any additional Other Income Benefits exceed 80% of your monthly Indexed Covered Earnings, your Disability Benefit will be reduced by the excess amount.

6

811

EXHIBIT 2

37



Current earnings include any wage or salary you earn for work performed (including earnings from self-employment) while Disability Benefits are payable. If you are working for another employer on a regular basis when your Disability begins, your current earnings will include any increase in the amount you earn from this work during the period for which Disability Benefits are payable.

We will, from time to time, review your status and will require satisfactory proof of earnings and continued Disability.

**Other Income Benefits**
While you are Disabled, you may be eligible to receive benefits from other income sources. If so, we may reduce the Disability Benefits payable to you under the Policy by the amount of these Other Income Benefits. The extent to which Other Income Benefits will reduce your Disability Benefits is shown in the Amounts of Insurance section of the Schedule of Benefits.

Other Income Benefits include:
1.      any amounts you or your dependents, if applicable, receive (or are assumed to receive*) under:
    a.      the Canada and Quebec Pension Plans;
    b.      the Railroad Retirement Act;
    c.      any local, state, provincial or federal government disability or retirement plan or law as it pertains to your Employer;
    d.      50% of any Accumulated Acute Sick Leave (AASL) and Chronic Sick Leave (CSL) sick leave plan of your Employer, provided they do not exceed 25% of your Monthly Base Compensation;
    e.      any work loss provision in mandatory "No-Fault" auto insurance;
    f.      any Workers' Compensation, occupational disease, unemployment compensation law or similar state or federal law, including all permanent as well as temporary disability benefits. This includes any damages, compromises or settlement paid in place of such benefits, whether or not liability is admitted.
2.      any Social Security disability benefits you or any third party receive (or are assumed to receive*) either on your behalf or for your dependents; or, if applicable, which your dependents receive (or are assumed to receive*) because of your entitlement to such benefits.
3.      any retirement plan benefits funded by your Employer. "Retirement plan" means any defined benefit or defined contribution plan sponsored or funded by your Employer. It does not include an individual deferred compensation agreement; the Common Plan, officially known as the Retirement Plan for Physicians Serving Members of Kaiser Foundation Health Plan; the Keogh Plan, officially known as the Southern California Permanente Medical Group Retirement Plan; a profit sharing or any other retirement or savings plan maintained in addition to a defined benefit or other defined contribution pension plan, or any Employee savings plan including a thrift, stock option or stock bonus plan, individual retirement account or 401(k) plan.
4.      any proceeds payable under any franchise or group insurance or similar plan. If there is other insurance that applies to the same claim for Disability, and contains the same or similar provision for reduction because of other insurance, we will pay our pro rata share of the total claim. "Pro rata share" means the proportion of the total benefit that the amount payable under one policy, without other insurance, bears to the total benefits under all such policies.
5.      any wage, vacation pay, salary or income from self-employment for work performed. Vacation pay does not include "vacation payoff", which is a lump sum payment of unused accrued vacation time that does not replace earnings. If Work Incentive Benefits apply to you, we will only reduce your Disability Benefits to the extent provided under your Work Incentive Benefit.

Dependents include any person who receives (or is assumed to receive) benefits under any applicable law on account of your entitlement to benefits.

*See the Assumed Receipt of Benefits provision.

EXHIBIT 2

812

3-8

*Increases In Other Income Benefits*

After we make the first deduction for any Other Income Benefit (except wage or salary), we will not reduce your Disability Benefits further during that period of Disability due to any cost of living increase in the Other Income Benefit.

*Lump Sum Payments*

Other Income Benefits or earnings that are paid in a lump sum will be prorated over the period for which the sum is given. If no time is stated, the lump sum will be prorated monthly over a five-year period.

If no specific allocation of a lump sum payment is made, we will assume the total payment is an Other Income Benefit.

*Assumed Receipt of Benefits*

We will assume you or your dependents, if applicable, are receiving Other Income Benefits if you may be eligible for them. We will estimate the amount of these assumed benefits on the basis of what you may be eligible to receive and reduce your Disability Benefits as if you actually received them.

Except for any wage or salary for work performed while Disability Benefits are payable, we will not assume your receipt of Other Income Benefits if you give us proof of the following events.
1.  Application was made for these benefits.
2.  Reimbursement Agreement is signed by you.
3.  Any and all appeals were made for these benefits, or we have determined further appeals will not be successful.
4.  Payments were denied.

We will not assume you have received, nor will we reduce your Disability Benefits by, any elective, actuarially reduced, or early retirement benefits under such laws until you actually receive them.

*Social Security Assistance*

We will, at our own discretion, assist you in applying for Social Security Disability Income (SSDI) benefits. Disability Benefits will not be reduced by your assumed receipt of SSDI benefits while you participate in the Social Security Assistance Program.

We may require you to file an appeal if we believe a reversal of a prior decision is possible. If you refuse to participate in, or cooperate with, the Social Security Assistance Program, we will assume receipt of SSDI benefits until you give us proof that you have exhausted all the administrative remedies available to you.

**Minimum Benefit**
We will pay the Minimum Benefit regardless of any reductions made for Other Income Benefits. However, if there is an overpayment due, this benefit may be reduced to recover the overpayment.

**Recovery of Overpayment**
If we overpay your benefits, we have the right to recover the amount overpaid by either requesting you to pay the overpaid amount in a lump sum or by reducing any amounts payable to you by the amount due. If there is an overpayment due when you die, we will reduce any benefits payable under the Policy to recover the overpayment.

TL-004771

8

**EXHIBIT 2**



## ADDITIONAL BENEFITS

### Rehabilitation During A Period of Disability

If you are Disabled and we determine that you are a suitable candidate for rehabilitation, you may participate in a Rehabilitation Plan. We must agree on the terms and conditions of the Rehabilitation Plan.

The Rehabilitation Plan may, at our discretion, allow for payment of your medical expense, education expense, moving expense, accommodation expense or family care expense while you participate in the program.

A "Rehabilitation Plan" is a written agreement between you and us in which we agree to provide, arrange or authorize vocational or physical rehabilitation services.

### Reasonable Accommodation Benefit

If you are Disabled, we may reimburse your Employer for expenses incurred in making a Reasonable Accommodation. To be eligible for this benefit, the Reasonable Accommodation must meet the following conditions.

1.  It must be made on your behalf and result in your ability to return to any occupation for your Employer.
2.  It must be approved by us in writing before it is implemented or any expense is incurred.
3.  It must meet federal standards of a Reasonable Accommodation as detailed in the Americans with Disabilities Act of 1990 and any later amendments.

"Reasonable Accommodation" means any modification or adjustment to a job, an employment practice, or the work environment that makes it possible for a person with a disability to perform the material duties of any occupation without causing undue hardship to the Employer.

### Spouse Benefit

While you are Disabled, your Spouse may, at our option, be eligible to participate in a Rehabilitation Plan. To be eligible, the following conditions must be met.

1.  You must be continuously Disabled for 12 months.
2.  Your Spouse's earnings must be 60% or less than your Covered Earnings.
3.  Your Spouse must be determined by us to be a suitable candidate for rehabilitation.

The Spouse's Rehabilitation Plan may include, at our discretion, payment of your Spouse's education expense, reasonable job placement expenses and moving expenses. It may also include family care expenses if necessary for your Spouse to be retrained under the Rehabilitation Plan.

Disability Benefits will be reduced by 50% of your Spouse's earnings from Rehabilitative Work. If your Spouse was working before the Rehabilitation Plan begins, Disability Benefits will be reduced by 50% of the increase in income that results from your Spouse's participation in the program.

"Spouse" means your lawful Spouse living with you on the date your Disability begins. The Rehabilitation Plan will end if your Spouse is not living with you during the term of the agreement.

TL-005105

### Survivor Benefit

We will pay a Survivor Benefit if you die while Disability Benefits are payable and at least 6 Monthly Benefits have been payable to you for a continuous period of Disability. The Survivor Benefit will equal 100% of the sum of the last full Disability Benefit payable to you plus any current earnings by which the Disability Benefit was reduced for that month. A single lump sum payment equal to 6 monthly Survivor Benefits will be payable.

EXHIBIT 2

814

40



We will pay the Survivor Benefit to your Spouse. If you do not have a Spouse, we will pay your surviving Children in equal shares. If you do not have a Spouse or any Children, no benefits will be paid.

"Spouse" means your lawful spouse. "Children" means your unmarried children under age 21 who are chiefly dependent upon you for support and maintenance. The term includes a stepchild living with you at the time of your death.

TL-005107

## WHAT IS NOT COVERED

We will not pay any Disability Benefits for a Disability that results, indirectly or directly, from:
1. suicide, attempted suicide, or whenever you injure yourself on purpose.
2. war or any act of war, whether or not declared.
3. serving on full-time active duty in any armed forces. If you send proof of military service, we will refund the portion of the premium paid to cover you during a period of such service.
4. terrorism or active participation in a riot.
5. commission of a felony.
6. revocation, restriction or non-renewal of your license, permit or certification necessary to perform the duties of your occupation unless due solely to Injury or Sickness otherwise covered by the Policy.

We will not pay Disability Benefits for any period of Disability during which you:
7. are incarcerated in a penal or corrections institution.

TL-004772

## CLAIM PROVISIONS

### Notice of Claim
Written notice, or any other electronic/telephonic means authorized by us, of claim must be given to us within 31 days after a covered loss occurs or begins, or as soon as reasonably possible. If written notice, or any other electronic/telephonic means authorized by us, is not given in that time, the claim will not be invalidated or reduced if it is shown that notice was given as soon as was reasonably possible. Notice can be given at our home office in Philadelphia, Pennsylvania or to our agent. Notice should include the Employer's name, the Policy Number and the claimant's name and address.

### Claim Forms
When we receive written notice of claim, we will send claim forms for filing proof of loss. If we do not send claim forms within 15 days after notice is received by us, the proof requirements may be met by submitting, within the time required under the "Proof of Loss" section, written proof of the nature and extent of the loss.

### Claimant Cooperation Provision
If you fail to cooperate with us in our administration of your claim, we may terminate the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

### Insurance Data
The Employer is required to cooperate with us in the review of claims and applications for coverage. Any information we provide to the Employer in these areas is confidential and may not be used or released by the Employer if not permitted by applicable laws.

10

815

EXHIBIT 2                                                        41




**Proof of Loss**
You must provide proof of loss to us within 90 days after the date of the loss for which a claim is made. If written proof of loss is not given in the 90 day period, the claim will not be invalidated or reduced if it is shown that it was given as soon as was reasonably possible. In any case, written proof must be given not more than a year after the 90 day period. If written proof of loss is provided outside of these time limits, the claim will be denied. These time limits will not apply due to lack of legal capacity.

You must provide us written proof that the loss continues at intervals required by us. Within 30 days of a request, written proof of continued Disability and of regular attendance of a Doctor must be given to us.

**Time of Payment**
Disability Benefits will be paid at regular intervals of not less frequently than once a month. Any balance, unpaid at the end of any period for which we are liable, will be paid at that time.

**To Whom Payable**
Disability Benefits will be paid to you. If any person to whom benefits are payable is a minor or, in our opinion is not able to give a valid receipt, such payment will be made to his or her legal guardian. However, if no request for payment has been made by the legal guardian, we may, at our option, make payment to the person or institution appearing to have assumed custody and support.

If you die while any Disability Benefits remain unpaid, we may, at our option, make direct payment to any of your following living relatives: your spouse, your mother, your father, your children, your brothers or sisters; or to the executors or administrators of your estate. We may reduce the amount payable by any indebtedness due.

Payment in the manner described above will release us from all liability for any payment made.

For plans subject to the Employee Retirement Income Security Act (ERISA), the Plan Administrator of your Employer's employee welfare benefit plan (the Plan) has appointed us as the Plan fiduciary under federal law for the review of claims for benefits provided by this Policy and for deciding appeals of denied claims. In this role we shall have the authority, in our discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact. All decisions made by us in this capacity shall be final and binding on participants and beneficiaries of the Plan to the full extent permitted by law.

We have no fiduciary responsibility with respect to the administration of the Plan except as described above. It is understood that our sole liability to the Plan and to participants and beneficiaries under the Plan shall be for the payment of benefits provided under this Policy.

**Physical Examination and Autopsy**
We may, at our expense, exercise the right to examine any person for whom a claim is pending as often as we may reasonably require. Also, we may, at our expense, require an autopsy unless prohibited by law.

**Legal Actions**
No action at law or in equity may be brought to recover benefits under the Policy less than 60 days after written proof, or any other electronic/telephonic means authorized by us, of loss has been furnished as required by the Policy. No such action shall be brought more than 3 years after the time written proof of loss must be furnished.

**Time Limitations**
If any time limit stated in the Policy for giving notice of claim or proof of loss, or for bringing any action at law or in equity, is less than that permitted by the law of the state in which you live when the Policy is issued, then the time limit provided in the Policy is extended to agree with the minimum permitted by the law of that state.

# EXHIBIT 2

816

42




**Doctor/Patient Relationship**
You have the right to choose any Doctor who is practicing legally. We will in no way disturb the Doctor/patient relationship.

TL-004724

## ADMINISTRATIVE PROVISIONS

**Premiums**
The premiums for this Policy will be based on the rates currently in force, the plan and the amount of insurance in effect.

**Your Grace Period**
If your required premium is not paid on the Premium Due Date, there is a 31 day grace period after each premium due date after the first. If the required premium is not paid during the grace period, insurance will end on the last day for which premium was paid.

**Reinstatement of Insurance**
Your coverage may be reinstated if your insurance ends because you are on an Employer approved leave of absence. Your insurance may be reinstated only if reinstatement occurs within 12 months from the date it ends due to an Employer approved leave of absence.

For your insurance to be reinstated the following conditions must be met.
1.    You must qualify under the Class Definition.
2.    The required premium must be paid.
3.    A written request for reinstatement and a new enrollment request for you must be received by us within 31 days from the date you return to Active Service.

Your reinstated insurance is effective on the date you return to Active Service. If you did not fully satisfy your Eligibility Waiting Period or Pre-Existing Condition Limitation before your insurance ended due to a leave of absence, you will receive credit for any time that was satisfied.

TL-004722 (32200)

## GENERAL PROVISIONS

**Incontestability**
The validity of the Policy shall not be contested except for non-payment of premium after the Policy has been in force for two years from the date of issue.

All statements made by the Employer or by you are representations not warranties. No statement will be used by us to deny or reduce benefits or be used as a defense to a claim, unless a signed copy of the instrument containing the statement has been given to you. In the event of your death or legal incapacity, your beneficiary or representative will receive the signed copy.

Except for fraud or for determining eligibility for insurance, we will not use any statement to contest your insurance after two years from the effective date of your coverage or from the effective date of any added or increased benefits.

**Misstatement of Age**
If your age is misstated, we will adjust all benefits to the amounts that would have been purchased for your correct age.

12

EXHIBIT 2

817

**43**




**Workers' Compensation Insurance**
Benefits payable under the Policy are not in lieu of and do not affect any requirements for coverage under any Workers' Compensation Insurance.

**Assignment of Benefits**
We will not be affected by the assignment of your certificate until the original assignment or a certified copy of the assignment is filed with us. We will not be responsible for the validity or sufficiency of an assignment. An assignment of benefits will operate so long as the assignment remains in force provided coverage under the Policy is in effect. Your insurance may not be levied on, attached, garnisheed, or otherwise taken for your debts. This prohibition does not apply where contrary to law.

**Clerical Error**
Your insurance will not be affected by error or delay in keeping records of insurance under the Policy. If such an error is found, the premium will be adjusted fairly.

**Agency**
The Employer and Plan Administrator are your agents for transactions relating to your insurance under the Policy. We are not liable for any of their acts or omissions.

TL-004728

# DEFINITIONS

Please note, certain words used in this document have specific meanings. These terms will be capitalized throughout this document. The definition of any word, if not defined in the text where it is used, may be found either in this Definitions section or in the Schedule of Benefits.

**Active Service**
If you are a Physician, you are in Active Service on a day which is one of your Employer's scheduled work days if either of the following conditions are met.
1.      You are actively at work. This means you are performing your regular occupation for the Employer on a Full-time basis, either at one of the Employer's usual places of business or at some location to which the Employer's business requires you to travel.
2.      The day is a scheduled holiday, vacation day or period of Employer approved paid leave of absence.

You are in Active Service on a day which is not one of the Employer's scheduled work days only if you were in Active Service on the preceding scheduled work day.

**Appropriate Care**
Appropriate Care means the determination made by a Doctor of an accurate and medically supported diagnosis of the cause of your Disability, or a plan established by a Doctor of ongoing medical treatment and care of your Disability that conforms to generally accepted medical standards, including frequency of treatment and care.

**Consumer Price Index (CPI-W)**
The Consumer Price Index for Urban Wage Earners and Clerical Workers published by the U.S. Department of Labor. If the index is discontinued or changed, another nationally published index that is comparable to the CPI-W will be used.

EXHIBIT 2

818

44




**Covered Earnings**
Covered Earnings means the greater of: a) your Monthly Base Compensation as reported by the Employer for work performed for the Employer as in effect just prior to the date your Disability begins. Covered Earnings will be prorated to your work schedule (including compensation increases during the first six months of disability) or b) your Average Monthly Gross Compensation for the first 12 months ending the June 30 or December 31 preceding the onset of Disability.

Gross Compensation means your Monthly Base plus premium pay (overnight and extra duties). It does not include amounts received as bonus, awards, imputed income or at-risk compensation.

Covered Earnings are determined initially on the date you apply for coverage. A change in the amount of Covered Earnings is effective on the next premium due date following the change if the Employer gives us written notice of the change and the required premium is paid.

Any increase in your Covered Earnings will not be effective during a period of continuous Disability after the first six months of Disability.

**Disability**
For purposes of coverage under the Policy, you are Disabled if, because of Injury or Sickness, you are unable to perform all the material duties of your regular occupation, or solely due to Injury or Sickness, you are unable to earn more than 80% of your Indexed Covered Earnings.

After Disability Benefits have been payable for 60 months, you are Disabled if your Injury or Sickness makes you unable to perform all the material duties of any occupation for which you may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, you are unable to earn more than 80% of your Indexed Covered Earnings.

**Doctor**
Doctor means a licensed physician practicing within the scope of his or her license and rendering care and treatment to an Insured that is appropriate for the condition and locality. The term does not include you, your spouse, your immediate family (including parents, children, siblings or spouses of any of the foregoing, whether the relationship derives from blood or marriage), of a Physician or spouse, or a person living in your household.

**Employee Physician - For Class 2 Only**
For eligibility purposes, an Employee Physician is an Employee of the Employer who qualifies under the Class Definition. Otherwise, an Employee Physician means an Employee of the Employer who is covered under the Policy.

**Employer**
The Policyholder and any affiliates or subsidiaries covered under the Policy. The Employer is acting as your agent for transactions relating to this insurance. You shall not consider any actions of the Employer as actions of the Insurance Company.

**Full-time**
Partner Physician: Full-time means the number of hours set by SCPMG as a prorated weekly schedule with each 1/10 unit equal to 4 hours work.

Employee Physician: Full-time means the number of hours set by SCPMG as a prorated weekly schedule working 5/10 or greater with each 1/10 unit equal to 4 hours work.

14

819

**EXHIBIT 2**

**45**



**Indexed Covered Earnings**
For the first 12 months Monthly Benefits are payable, your Indexed Covered Earnings are equal to your Covered Earnings. After 12 Monthly Benefits are payable, your Indexed Covered Earnings are your Covered Earnings plus an increase applied on each anniversary of the date Monthly Benefits became payable. The amount of each increase will be the lesser of:
1.      10% of your Indexed Covered Earnings during your preceding year of Disability; or
2.      the rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year.

**Injury**
Any accidental loss or bodily harm that results directly or independently from all other causes from an Accident.

**Insurability Requirement**
An eligible person satisfies the Insurability Requirement for an amount of coverage on the day we agree in writing to accept you as insured for that amount. To determine a person's acceptability for coverage, we will require you to provide evidence of good health and may require it be provided at your expense.

**Insurance Company**
The Insurance Company underwriting the Policy is named on your certificate cover page. References to the Insurance Company have been changed to "we", "our", "ours", and "us" throughout the certificate.

**Insured**
You are an Insured if you are eligible for insurance under the Policy, insurance is elected for you, the required premium is paid and your coverage is in force under the Policy.

**Partner Physician - For Class 1 Only**
For eligibility purposes, a Partner Physician is a Physician of SCPMG in one of the "Classes of Eligible Employee Physicians". Otherwise, a Partner Physician means a Physician of SCPMG who is insured under the Policy, has been duly elected into the partnership and is eligible for the benefits of partnership as outlined in the Partnership Agreement and the Employer's Rules and Regulations as on file with the Employer.

**Physician - For Class 3 Only**
For eligibility purposes, you are a Physician if you work for the Employer and are in one of the "Classes of Eligible Employee Physicians." Otherwise, you are a Physician if you are an employee of the Employer who is insured under the Policy.

**Prior Plan**
The Prior Plan refers to the plan of insurance providing similar benefits to you, sponsored by the Employer and in effect directly prior to the Policy Effective Date.

**Sickness**
The term Sickness means a physical or mental illness or disease.

TL-004708 (20290)

15

EXHIBIT 2

820

**46**

## SUPPLEMENTAL INFORMATION
for

**Long-Term Disability Plan**

required by the Employee Retirement
Income Security Act of 1974

As a Plan participant in Southern California Permanente Medical Group's Insurance Plan, you are entitled to certain rights and protection under the Employee Retirement Income Security Act of 1974 (ERISA).

You should refer to the attached Certificate for a description of when you will become eligible under the Plan, the amount and types of benefits available to you, and the circumstances under which benefits are not available to you or may end. The Certificate, along with the following Supplemental Information, makes up the Summary Plan Description as required by ERISA.

### IMPORTANT INFORMATION ABOUT THE PLAN

- The Plan is established and maintained by Southern California Permanente Medical Group.

- The Employer Identification Number (EIN) is 95-1750445.

- The Plan Number is 509.

- The Insurance Plan is administered directly by the Plan Administrator with benefits provided, in accordance with the provisions of the group insurance contract, LK-020200, issued by LIFE INSURANCE COMPANY OF NORTH AMERICA.

- The Plan Administrator is:    Southern California Permanente Medical Group
Business Administrator
393 East Walnut Street
Pasadena, CA 91188-8018

    The Plan Administrator has authority to control and manage the operation and administration of the Plan. The Plan Administrator may terminate, suspend, withdraw or amend the Plan, in whole or in part, at any time, subject to the applicable provisions of the Policy. (Your rights upon termination or amendment of the Plan are set forth in your Certificate.)

- The agent for service of legal process is the Plan Administrator.

- The Plan of benefits is financed by the Employer for Class 1 and the Employee Physician for Classes 2 and 3.

- The date of the end of the Plan Year is December 31.

### YOUR RIGHTS AS SET FORTH BY ERISA

As a Plan participant, ERISA gives you certain rights and protection. To ensure the protection of these rights, ERISA requires any person or entity who is responsible for the operation of the Plan to administer the Plan in a fiduciary capacity. This means that this person, or entity, must act prudently and with the sole purpose of the Plan participants in mind.

16

EXHIBIT 2

821

47

If you request, the Plan Administrator must:

a.    Allow you to examine, without charge, at the Plan Administrator's office, all Plan documents
including insurance contracts, collective bargaining agreements and copies of all documents filed by
the Plan with the U.S. Department of Labor, such as, annual reports and Plan descriptions.

b.    Provide you with Plan documents and other Plan information. Any request you make for this
information must be in writing to the Plan Administrator. There may be a reasonable charge for the
copies.

c.    Provide you with a summary of the Plan's annual financial report. (On certain plans, the law
requires the Plan Administrator to provide you with this information.)

Unless there are reasons beyond the Plan Administrator's control, materials you request should be received
within 30 days. If you do not receive these materials within that time, you may file suit in a federal court.
The court may require the Plan Administrator to pay you up to $110 for each day the material is delayed.

No one, not even your employer, may fire you or discriminate against you in order to prevent you from
obtaining a benefit or exercising the rights you have under ERISA.

You may file suit in a federal or state court if any of the following situations arise:

a.    You believe you have been improperly denied a benefit, in whole, or in part.
b.    You believe the Plan fiduciaries are misusing Plan funds.
c.    You believe you have been discriminated against for asserting your rights. (In this case, you may file
suit in court or request assistance from the U.S. Department of Labor.)

The court will decide who should pay court costs and legal fees. If you win your case, the court may order
the person you have sued to pay the costs and fees. However, if you lose, or if the court finds that your suit
is frivolous, you may be required to pay the costs and fees.

### WHAT YOU SHOULD DO AND EXPECT IF YOU HAVE A CLAIM

When you are eligible to receive benefits under the Plan, you must request a claim form or obtain instructions
for submitting your claim telephonically or electronically, from the Plan Administrator. All claims you submit
must be on the claim form or in the electronic or telephonic format provided by the Insurance Company.
You must complete your claim according to directions provided by the Insurance Company. If these forms
or instructions are not available, you must provide a written statement of proof of loss. After you have
completed the claim form or written statement, you must submit it to the Office of Permanente Benefits and
Retirement Plans.

The Employer has appointed the Insurance Company as the named fiduciary for adjudicating claims for
benefits under the Plan, and for deciding any appeals of denied claims. The Insurance Company shall have
the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage
or benefits under the Plan, and to make any related findings of fact. All decisions made by the Insurance
Company shall be final and binding on participants and beneficiaries to the full extent permitted by law.

EXHIBIT 2

822

48



The Insurance Company has 45 days from the date it receives your claim for disability benefits, or 90 days from the date it receives a claim for any other benefit, to determine whether or not benefits are payable to you in accordance with the terms and provisions of the Policy. The Insurance Company may require more time to review your claim if necessary due to circumstances beyond its control. If this should happen, the Insurance Company must notify you in writing that its review period has been extended for up to two additional periods of 30 days ( in the case of a claim for disability benefits), or one additional period of 90 days (in the case of any other benefit). If this extension is made because you must furnish additional information, these extension periods will begin when the additional information is received. You have up to 45 days to furnish the requested information.

During the review period, the Insurance Company may require a medical examination of the Insured, at its own expense; or additional information regarding the claim. If a medical examination is required, the Insurance Company will notify you of the date and time of the examination and the physician's name and location. It is important that you keep any appointments made since rescheduling examinations will delay the claim process. If additional information is required, the Insurance Company must notify you, in writing, stating the information needed and explaining why it is needed.

If your claim is approved, you will receive the appropriate benefit from the Insurance Company.

If your claim is denied, in whole or in part, you must receive a written notice from the Insurance Company within the review period (or within 75 or 105 days if the review period was extended). The Insurance Company's written notice must include the following information:

1.   The specific reason(s) the claim was denied.
2.   Specific reference to the Policy provision(s) on which the denial was based.
3.   Any additional information required for your claim to be reconsidered, and the reason this information is necessary.
4.   In the case of any claim for a disability benefit, identification of any internal rule, guideline or protocol relied on in making the claim decision; and an explanation of any medically-related exclusion or limitation involved in the decision.
5.   A statement informing you of your right to appeal the decision, and an explanation of the appeal procedure, as outlined below.

**Appeal Procedure for Denied Claims**
Whenever a claim is denied, you have the right to appeal the decision. You (or your duly authorized representative) must make a written request for appeal to the Insurance Company within 60 days (180 days in the case of any claim for disability benefits) from the date you receive the denial. If you do not make this request within that time, you will have waived your right to appeal.

Once your request has been received by the Insurance Company, a prompt and complete review of your claim must take place. This review will give no deference to the original claim decision, and will not be made by the person who made the initial claim decision. During the review, you (or your duly authorized representative) have the right to review any documents that have a bearing on the claim, including the documents which establish and control the Plan. Any medical or vocational experts consulted by the Insurance Company will be identified. You may also submit issues and comments that you feel might affect the outcome of the review.

The Insurance Company has 60 days from the date it receives your request to review your claim and notify you of its decision (45 days, in the case of any claim for disability benefits). Under special circumstances, the Insurance Company may require more time to review your claim. If this should happen, the Insurance Company must notify you, in writing, that its review period has been extended for an additional 60 days (45 days in the case of any claim for disability benefits). Once its review is complete, the Insurance Company must notify you, in writing, of the results of the review and indicate the Plan provisions upon which it based its decision.

18

EXHIBIT 2

823

**49**



## WHO YOU SHOULD CONTACT IF YOU HAVE QUESTIONS ABOUT THE PLAN

If you have any questions about the Plan, contact the Plan Administrator.

If you have any questions about this statement or about your rights under ERISA, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefit Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210.

While ERISA requirements are established by federal law and regulation, Southern California Permanente Medical Group has always attempted to provide its Physicians with welfare benefit plans that meet the same high standards imposed by the law. We are pleased that the law will enable better application of these standards.

LM-5B35a

19

824

EXHIBIT 2

50

UNDERWRITTEN BY:
**LIFE INSURANCE COMPANY OF NORTH AMERICA**
a CIGNA Company



Classes 1, 2 and 3
12/2003

**CIGNA Group Insurance**
Life • Accident • Disability

EXHIBIT 2

825

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action; my business address is Burke, Williams & Sorensen, LLP, 444 South Flower Street, Suite 2400, Los Angeles, California 90071-2953.

     On November 9, 2007, I served the following document(s) described as **NOTICE OF REMOVAL OF CIVIL ACTION** on the interested party(ies) in this action as follows:

☒    by placing true copies thereof enclosed in a sealed envelope addressed stated on the attached service list.

☒    **BY MAIL:** I am "readily familiar" with the firm's practice of collecting and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope was placed for collection and mailing with postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary business practices.

☐    **BY FACSIMILE:** At approximately _____, I caused said document(s) to be transmitted by facsimile. The telephone number of the sending facsimile machine was (213) 236-2700. The name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the service list. The document was transmitted by facsimile transmission, and the sending facsimile machine properly issued a transmission report confirming that the transmission was complete and without error.

☐    **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by to receive documents, in an envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) served hereunder.

☐    **BY HAND DELIVERY:** I delivered such envelope(s) by hand to the office of the addressee(s).

☐    **BY PERSONAL SERVICE:** I personally delivered such envelope(s) to the addressee(s).

     I declare under penalty of perjury under the laws of the United States of America and the State of California that the above is true and correct. I declare that I ☒ am employed in the office of a member of the bar of this court at whose direction the service was made; ☐ served the above document(s) at the direction of a member of the bar of this court.

     Executed on November 9, 2007, at Los Angeles, California.

_Mary Musulman_
_____
MARY MUSULMAN

LA #4849-2963-6610 v1           1

## SERVICE LIST

*Sheff v. Life Ins. Co. of North America, et al.*

Stephen F. Lopez, Esq.
GERACI & LOPEZ
13355 Midland Road, Suite 140
Poway, CA  92064

Tel:  (619) 233-3131
Fax:   (619) 374-1911
Attorneys for Plaintiff Conrad Sheff, M.D.

**JS 44**  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| | |
|---|---|
| **I. (a) PLAINTIFFS:**<br>CONRAD SHEFF, M.D., an individual | **DEFENDANTS:** LIFE INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania Corporation conducting business in the State of California and doing business as CIGNA GROUP INSURANCE and Does 1 through 50, inclusive |
| **(b)** County of Residence of First Listed Plaintiff <u>San Diego</u><br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
| **(c)** Attorney's (Firm Name, Address, and Telephone Number)<br>Geraci & Lopez<br>Stephen F. Lopez, SBN 125058<br>13355 Midland Rd., Suite 140<br>Poway, CA 92064<br>(619) 233-3131 | Attorneys (If Known)<br>Burke, Williams & Sorensen, LLP<br>Daniel W. Maguire, SBN 120002<br>444 S. Flower St., Suite 2400<br>Los Angeles, CA 90071-2953<br>(213) 236-0600 |

'07 CV 2168 H CAB

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | |
| ☐ 2 | U.S. Government Defendant | |
| ☒ 3 | Federal Question (U.S. Government Not a Party) | |
| ☐ 4 | Diversity (Indicate Citizenship of Parties in Item III) | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury — Med. Malpractice<br>☐ 365 Personal Injury — Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 USC 3410 |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | ☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities – Employment<br>☐ 446 Amer. w/Disabilities – Other<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☒ 791 Empl. Ret. Inc. Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | Transferred from | | Appeal to District |
|---|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

| | |
|---|---|
| **VI. CAUSE OF ACTION** | Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):<br>28 U.S.C. § 1441(b); 28 U.S.C. §§ 1332(a) and 1441(a); 28 U.S.C. § 84(d)<br>Brief description of cause:<br>ERISA benefit recovery action. |
| **VII. REQUESTED IN COMPLAINT:** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   CHECK YES only if demanded in complaint:<br>JURY DEMAND: ☐ Yes ☒ No |
| **VIII. RELATED CASE(S) IF ANY** | (See instructions)   JUDGE _____   DOCKET NUMBER _____ |

| | |
|---|---|
| DATE<br>November 9, 2007 | SIGNATURE OF ATTORNEY OF RECORD<br>DANIEL W. MAGUIRE |

**FOR OFFICE USE ONLY**

RECEIPT # 144412    AMOUNT $350  11/13/07 JJH    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

# ORIGINAL

American LegalNet, Inc. | www.USCourtForms.com

LA #4841-8639-1554 v1

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 144412    — BH**

**November 13, 2007
12:09:42**

**Civ Fil Non-Pris**
USAO #.: 07CV2168 CIVIL FILING
Judge..: MARILYN L HUFF
Amount.:                    $350.00 CK
Check#.: BC# 41204

**Total—>  $350.00**

FROM: SHEFF V. LIFE INS. OF NORTH
        AMERICA
        CIVIL FILING